E. H. Lombard *v.* A. E. Martin.

## E. H. LOMBARD *v.* A. E. MARTIN.

1. CONTRACT: PROMISE: WHAT WORDS CONSTITUTE: CASE IN JUDGMENT.— C. had been purchasing goods at plaintiff's store on a credit ; plaintiff determined to sell him no more goods until he could see defendant ; plaintiff called on defendant and told him that C. was making an account with him, and that he did not wish to let him go any further unless he knew more about him ; defendant replied that C. was getting three hundred dollars a year and his board, and " to let him have on," which plaintiff did :—*Held,* there was no promise on the part of defendant to become either primarily or secondarily liable to plaintiff for goods sold to C.

2. PRINCIPAL AND SURETY: CONTRACT OF SURETYSHIP MUST BE IN WRITING. —The contract of guarantee or suretyship for another is valid only when in writing.

3. INSTRUCTIONS: MUST BE APPLICABLE TO THE EVIDENCE.—An instruction must not only be correct when considered as an abstract proposition of law, but it must expound the law correctly as applicable to the evidence in the cause, without danger of misleading the jury.

ERROR to the Circuit Court of Rankin county. Hon. John Watts, judge.

*W. P. Harris,* for plaintiff in error.

The proof in the cause fails signally to establish any contract by Lombard to pay at all in any event. Martin did not go to Lombard to get *security,* but *information,* and he obtained it. This is not an action for deceit. It is not shown that Lombard misrepresented Cox's condition. His language is not a promise to pay for the goods, but is advice merely. Martin did not go to Lombard and say, "Lombard, I don't know Cox, and I do not intend to credit him unless you will agree to be bound for him ;"

but he asks what are his circumstances. Lombard explains them, and says, " Let him have on," but not, " Let him have goods and I will pay." No. ".He has a salary of three hundred dollars. I will make further inquiry." It is not in the power of the jury or court to make out of this a promise, *original* or *secondary,* and the verdict was therefore wrong in any point of view. But if promise at all, it was secondary. The rule is, that if the party to whom the goods are sold is liable if credit is given to him and he is looked to for payment, the promise is secondary and within the statute. *Brady* v. *Sackrider,* 1 Sandford R. 514; *Kingsley* v. *Balcomb,* 4 Barb. 131.

Lombard's remark was, at best, this: " He may be trusted; he receives a salary." But Martin, a merchant and man of business, when asked to state how he regarded the transaction, says he regarded Lombard *as surety;* and to prove that, he gave credit to Cox; he says he did give credit to him, and marked Lombard's name in pencil as surety. Martin cannot be supposed to be ignorant of the terms he used. All the authorities hold that though the fact that the articles are *charged* to the party receiving is not conclusive that credit was given to that party, yet it is strong evidence that credit was given to him, and it is necessary to show *mistakes.* See Parsons on Contracts, 499.

That Lombard was not held to be principally liable is shown by the fact that the articles were not included in his own account, and no demand was made of him until Cox had left the country. The jury could not disregard this overwhelming evidence. The plaintiff, Martin, when called back and re-examined, is made to say he gave credit to Lombard, but not to Lombard *only.* Of course credit is given always to a *surety;* but the plaintiff says repeatedly that he regarded Lombard as responsible as surety for Cox, and the form of the transaction and circumstances all show demonstrably that such was the attitude in which Lombard was placed by Martin.

The first instruction obliterates all distinction between primary and secondary obligations. " If the jury believe that Martin *gave credit* to Lombard, and sold goods to Cox on the faith of Lombard, (*whether faith as surety or otherwise,*) they should find for plaintiff for all goods sold to Cox after Lombard told Martin

to let him have them, before he had notice not to let him have any more." The language of Lombard is, "Let him have on." Whether this means, "Let him have goods," was a matter for the jury; and, besides, Lombard denies that he made use of the language at all, and the court not only *assumes* that he *did use the words above, but that he meant "Let Cox have goods."* This instruction disposes both of fact and law in such manner that there was nothing left for the jury but to render a verdict for the plaintiff.

Where security is demanded, there is always credit and faith given to the security. The court should have so worded the instruction that the jury should have found what the contract was. If the jury believe, from the evidence, *that Lombard promised to pay for the goods sold* to Cox, and that the credit was given to Lombard and not to Cox, and that Martin sold the goods on the faith of Lombard's promise, looking to him only for pay, then they should find for the plaintiff for all goods sold after such promise.

This instruction would have propounded the law, and left the facts for the jury. But the court will see that the instruction assumes that Lombard did promise to pay for goods which Cox might buy, a matter not proved, and denied by a witness. The error in this instruction is palpable, and it is not cured by any other instruction; and, besides, there is no evidence on which the verdict can stand. Lombard is sued as an original promisor to pay for the goods.

*Mayers* and *Lowry*, for defendant in error,

Reviewed the evidence, insisting that it was amply sufficient to sustain the proposition that defendant had become primarily responsible for the goods sold to Cox; that at all events this was a question for the jury, and they had decided it in favor of plaintiff below.

They cited and relied on the following authorities: *Tatum et al* v. *Bonner*, 27 Miss. R. 765; *Clophin* v. *Crozart*, 13 S. & M. 363; *De Wolf* v. *Roband*, 1 Peters; *Townsly* v. *Sumrall*, 2 Peters; *Elder* v. *Warfield*, 7 Harr. & J. 391.

HANDY, J., delivered the opinion of the court:

This action was brought to recover upon an account alleged

to be due the plaintiff by the defendant for goods and merchandise sold and delivered.

It appears from the evidence that the goods were obtained from the plaintiff by one Cox, under the following circumstances, as stated by the plaintiff in his own testimony before the jury : Cox had been purchasing goods at the plaintiff's store, for which he was charged on his books, and the plaintiff determined to let him have no more goods until he could see the defendant.   He called on defendant, and told him that Cox was making an account with him, and that he did not wish to let it go any further unless he knew more about him ; and defendant told him that Cox was getting three hundred dollars a year and his board, and "*to let him have on,*" and he did so to the amount of the balance of the account stated, part of it being for goods previously sold to Cox. These goods were all charged to Cox on the plaintiff's books.   He stated that from the defendant's words used in the conversation, he considered defendant as surety for Cox, and he rather thought that he marked with a pencil in the journal that defendant was surety ; that the credit, so far as appeared on the books, was given to Cox alone ; that he did not understand the technical difference between principal and surety in such case, or guarantor or guarantee ; and that he should not have sold the goods to Cox, if Lombard had not become, as he understood it, responsible for them or surety for Cox ; that Cox had left without paying the account, and that he had taken no steps to make him pay it.   Two other witnesses prove the language used by the defendant, as testified to by the plaintiff.   No other circumstances were proved tending to create a liability on the part of the defendant for the goods sold.

Upon this evidence the court instructed the jury, at the instance of the plaintiff, that if they believed from the evidence that Martin sold the goods to Cox upon the faith of Lombard, although Lombard's name was not on his books, they should find for the plaintiff for all such goods as were sold to Cox by Martin after Lombard told Martin to let him have them, &c. ; and this instruction is insisted, on the part of the plaintiff in error, to be erroneous.

We think that the evidence clearly did not justify this instruction, and that it was calculated to mislead the jury.

In the first place, the declaration of the defendant was clearly

not sufficient to create a liability upon him. It was made upon the application of the plaintiff, and, as stated by him, it had the effect of mere advice, or the expression of an opinion, that the plaintiff could safely let Cox have further goods. The words employed, under the circumstances, do not of themselves import an *assumpsit;* and no motive of interest or obligation is shown on the part of the defendant, tending to show that he was desirous of obtaining the credit for Cox. The fact that the plaintiff considered, from the conversation which he sought, that the defendant was liable, either originally or secondarily, for the goods, can have no effect upon the liability of the defendant. The evidence was insufficient to warrant the jury in coming to the conclusion that the goods were sold *on the faith of the defendant*, in the sense that would create a liability upon the defendant as original debtor for the goods; and this is very clear from the fact that, besides the insufficiency of the words used to create such liability, the goods were charged on the plaintiff's books to Cox, and the plaintiff shows that he regarded the defendant as only bound as surety.

2. But the instruction is erroneous with reference to the attitude which the plaintiff himself clearly shows that he regarded the defendant as occupying, which is that of surety; for if he stood in that relation to the contract, he was not bound unless he had become so by note or memorandum in writing, of the existence of which there is no pretence. Yet, under this instruction, the jury might have believed that he was surety, and so that the goods were " sold upon his faith," to Cox—the faith that he would pay for them, *if Cox did not;* and, believing that he was liable under such circumstances, they might have found for the plaintiff.

The judgment is reversed, and the cause remanded for a new trial.